# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ZACHARY CORN, *Plaintiff*, v. TARGET CORP., *Defendant*. | No. 22 CV 4700<br><br>Judge Lindsay C. Jenkins |

### MEMORANDUM OPINION AND ORDER

Plaintiff Zachary Corn brings this putative class action against Defendant Target Corporation ("Target") for alleged violations of the pre-sale availability rule of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"), and its implementing regulations, 16 C.F.R. §§ 700.1 *et seq.* The MMWA confers a private right of action on consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under" 15 U.S.C. §§ 2301–2312. 15 U.S.C. § 2310(d). Two motions are before the Court—Defendant's motion to dismiss for failure to state a claim and Defendant's motion to strike Plaintiff's proposed class. [Dkt. No. 32] (motion to dismiss); [Dkt. No. 33] (motion to strike).

In moving to dismiss, Defendant argues, among other things, that Plaintiff has not suffered "damage[s]" within the meaning of the MMWA's private right of action and, therefore, is not entitled to sue. [Dkt. No. 32, 6–11] Defendant's argument on that score has substantial merit, but raises the more fundamental question whether Plaintiff has Article III standing. For the reasons set forth below, the Court concludes

that—on the complaint before the Court—Defendant has not met its burden to plausibly show that Plaintiff satisfies this threshold jurisdictional requirement. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) ("Where, as here, a case is removed from state court, the roles are reversed and . . . *the defendant*, as the proponent of federal jurisdiction, must establish the plaintiff's Article III standing." (emphasis original)).

The Court recognizes, however, that the issue of standing was not fully fleshed out by the parties in briefing Defendant's motions. In the interest of fairness, the Court will allow, but will not require, each party an opportunity to file supplemental submissions addressing the jurisdictional defects identified in this opinion. Plaintiff may file his supplemental submission no later than May 25, 2023, but he is not obligated to do so, and it is ultimately Defendant's burden to plausibly show standing given the posture of this case. Defendant may file its supplemental submission no later than June 1, 2023. In the event that any supplemental submissions fail to plausibly show standing, the Court will remand the case to the Cook County Circuit Court for further proceedings.

**I.     Background**

Because the facts alleged in Plaintiff's complaint—and the standing issue under consideration by the Court—are best understood in light of the statutory right he seeks to assert, the Court will briefly examine the MMWA, the pre-sale availability rule promulgated by the Federal Trade Commission ("FTC") thereunder, and the dual

2

mechanisms Congress created to enforce it. The Court will then examine the specific allegations of Plaintiff's complaint and the procedural history of this case.

### A. The Magnuson-Moss Act

The Magnuson-Moss Act was enacted "to ensure that consumers could get complete information about warranty terms and conditions." *Businessperson's Guide to Federal Warranty Law*, FED. TRADE COMM'N, https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-law#Magnuson-Moss. "By providing consumers with a way of learning what coverage is offered on a product before they buy," the Act was intended to encourage both comparison shopping by consumers and competition between manufacturers on the substantive terms of product warranties. *Id.*

In furtherance of these statutory purposes, and no doubt others, the MMWA regulates the substantive content of product warranties, 15 U.S.C. § 2302(a), and—as relevant here—requires the Federal Trade Commission to promulgate rules "requiring that the terms of any written warranty on a consumer product be made available to the consumer (or prospective consumer) prior to the sale of the product to him." 15 U.S.C. § 2302(b)(1)(A).

This requirement gave rise to the FTC's pre-sale availability rule, which is codified at 16 C.F.R. § 702.3 and requires any "seller" of a consumer product—defined by § 702.1(e) as "any person who sells or offers for sale for purposes other than resale or use in the ordinary course of the buyer's business any consumer product"—to

3

"make [the] text of [written] warrant[ies] readily available for examination by the prospective buyer" prior to sale. 16 C.F.R. § 702.3(a).

A seller may comply with this requirement in one of two ways. First, it can "[d]isplay" the warranty "in close proximity to the warranted product." *Id.* at § 702.3(a)(1). Alternatively, the seller can "[f]urnish [the warranty] upon request prior to sale," so long as it also "plac[es] signs reasonably calculated to elicit prospective buyer[s'] attention in prominent locations in the store or department advising" them of the availability of warranties on request. *Id.* at § 702.3(a)(2).

Under either method, sellers can satisfy the rule "through electronic or other means" if a warrantor has "provide[d] the warranty terms in an accessible digital format on the warrantor's Internet Web site." *Id.* at §§ 702.3(a)(1)–(2), 702.3(b)(2). A warrantor that publishes its warranties electronically must still "[p]rovide a hard copy of the warranty terms promptly and free of charge upon request by a consumer or seller" by phone or by mail. *Id.* at §§ 702.3(b)(2)(i)(B), 702.3(b)2)(ii).

The MMWA creates two primary enforcement mechanisms to vindicate consumers' interest in disclosure, one administrative and one private. Only the private right of action is relevant to this case. The statute creates a private right of action—authorizing suits for both legal and equitable relief—available to any "consumer who is *damaged* by the failure of a supplier, warrantor, or service contractor to comply with any obligation" imposed under chapter 50 or under any "written warranty, implied warranty, or service contract . . . ." *Id.* at § 2310(d) (emphasis added). "Supplier" is defined broadly to "mean[] any person engaged in the

4

business of making a consumer product directly or indirectly available to consumers." *Id.* at § 2301(4).

B.  **Factual Background**

With this legal context in view, the Court will now examine the factual content of Plaintiff's complaint. Because this case is before the Court on Defendant's motion to dismiss, the Court accepts the truth of Plaintiff's well-pleaded factual allegations. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). It does so, of course, without vouching for their ultimately veracity.

This case arises out of Plaintiff's purchase of a simplehuman trash can from an unspecified Target store in August of 2021. [Dkt. No. 30, ¶¶ 8, 29]. Although the product was covered by a manufacturer warranty, Target made no effort to bring that fact to Plaintiff's attention. [*Id.* at ¶ 8]. It neither "display[ed]" the warranty "in close proximity to the" product nor "place[d] signs reasonably calculated to elicit Plaintiff's attention, in prominent locations in the store or department, advising Plaintiff of the availability of warranties on upon request." [*Id.* at ¶ 30]. Consequently, "Plaintiff was unable to access [the] warranty associated with the [p]roduct until after" he purchased it. [*Id.* at ¶¶ 31, 33].

According to Plaintiff, his experience was not an isolated incident, but rather part of a systematic effort by Target to deprive consumers of warranty-related information. [*Id.* at ¶¶ 21–27]. Plaintiff implies that Target engages in this behavior to boost sales of extended warranties, which it offers to consumers during checkout. [*Id.* at ¶¶ 24, 27]. In Plaintiff's view, "these plans are largely unnecessary, as they

5

provide coverage that is duplicative of the given product's existing warranty, at least for the life of the manufacturer's warranty." [*Id.* at ¶ 26]. By preventing consumers from reviewing potential overlap between the manufacturer warranty that comes with a product and the extended warranty offered by Defendant, Defendant—Plaintiff's theory goes—dupes consumers into purchasing unnecessary protection. [*Id.* at ¶ 27].

Plaintiff himself does not allege that he was offered or that he purchased extended warranty protection. He does claim, however, that his purchase came with a manufacturer warranty that places unlawful restrictions on his use of third-party replacement parts. Specifically, he points to language in the warranty, to which he provides a link in the complaint,[1] that allegedly "excludes warranty coverage for, *inter alia*, '[m]odifications or alterations to the product,' and '[n]on-simplehuman parts." [*Id.* at ¶ 35]. According to Plaintiff, this language constitutes a "type of warranty-voiding condition, where the warranty is 'tied' to exclusive repair by the manufacturer," that "is expressly prohibited by the MMWA and its implementing regulations . . . ." [*Id.* at ¶ 36]; *see* 16 C.F.R. § 700.10(c).

Plaintiff does not state whether he asked to see the simplehuman warranty before purchasing the trash can or whether he attempted to look it up online. Nevertheless, he implies that he would not have purchased the simplehuman trash

---

[1]  *a simple promise*, SIMPLEHUMAN, https://www.simplehuman.com/pages/warranty. The webpage Plaintiff links to includes two simplehuman warranties, a "standard warranty" and "commercial warranty." Plaintiff does not specify which of these warranties he received. In all relevant particulars, however, the two are identical.

6

can (or at least not paid full price) had he known that it came with an unlawful warranty. [*Id.* at ¶¶ 32, 37].[2]

### C. Procedural History

Plaintiff brought this action on July 15, 2022, in the Circuit Court of Cook County, on behalf of himself and a proposed class consisting of "[a]ll citizens of Illinois who purchased one or more products from Defendant that cost over $15 and that were subject to a written warranty." [Dkt. No. 1-3, Exhibit B, p. 18. ¶ 40]. Defendant timely removed the action to this District, [Dkt. No. 1], after which Plaintiff moved to remand for lack of subject matter jurisdiction. [Dkt. No. 8]. That motion—which did not raise the issue of standing—was denied on November 7, 2022. [Dkt. No. 19].

Shortly thereafter, Defendant moved to dismiss the complaint for failure to state a claim. [Dkt. No. 24]. In lieu of responding to that motion, Defendant filed an amended complaint, the operative complaint for present purposes. [Dkt. No. 30]. That complaint seeks declaratory and injunctive relief on behalf of an identical class. [*Id.* at ¶ 39] (class); [*id.* at p. 14] (relief). Defendant now moves to dismiss that complaint and, alternatively, to strike Plaintiff's class allegations. [Dkt. No. 32]; [Dkt. No. 33].

## II. Legal Standard

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion, LLC v. Ramirez*, 141 S. Ct.

---

[2] The Court draws this inference from Plaintiff's allegation that "Defendant's noncompliance with the" pre-sale availability rule "damaged [him] by depriving him of the full value to which he was entitled as part of his purchase, and by infringing on his property rights." [Dkt. No. 30, ¶ 37]. Implicit in this claim is Plaintiff's belief that the product he purchased is worth less than its sale price.

7

2190, 2203 (2021); *see* U.S. CONST. art. III, § 2. This restriction is "founded in concern about the proper—and properly limited—role of the courts in a democratic society," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), and preserves "the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). It requires that the plaintiff demonstrate that he has a "personal stake in the case" sufficient to justify the exercise of federal judicial power. *TransUnion*, 141 S. Ct. at 2203 (internal quotation marks omitted); *Warth*, 422 U.S. at 498 ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. The "plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Standing must be shown "for each type of relief ought," *Summers*, 555 U.S. at 493—that a plaintiff has standing to

pursue one type of relief, say, damages, does not itself establish standing to pursue other types of relief, like an injunction.

Ordinarily, the plaintiff "bears the burden of showing that he has standing," *id.*, and must do so "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Where a case is removed from state court, however, "the roles are reversed and the burden flips: In this procedural posture, *the defendant*, as the proponent of federal jurisdiction, must establish the plaintiff's Article III standing." *Fox*, 980 F.3d at 1151. A failure to do so requires the federal court to remand the case to state court. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Finally, "'[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo*, 136 S. Ct. 1547 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

### III.  Analysis

The Court does not reach the issue of standing on a blank slate. The parties have addressed it—in various guises—in litigating both Defendant's motion to dismiss and motion to strike. In moving to dismiss, for instance, Defendant vigorously contests Plaintiff's statutory standing to bring this suit, arguing that Plaintiff has not been "damaged" within the meaning of 15 U.S.C. § 2310(d)'s private right of

9

action. [Dkt. No. 32, 6–11]. Anticipating that this position might also undercut the existence of Article III standing, Defendant went out of its way to emphasize that "statutory standing 'does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.'" [Dkt. No. 32, 11] (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)).

Puzzlingly, given both Defendant's burden to establish Article III standing on removal and given Plaintiff's argument that Defendant's argument, if meritorious, would require remand for lack of subject matter jurisdiction, [Dkt. No. 40, 15], Defendant's reply does not identify a concrete injury insufficient under section 2310(d) but sufficient under Article III. [Dkt. No. 43, 9]. Instead, Defendant maintains that "Plaintiff's lack of statutory standing to pursue MMWA claims does not implicate Article III's case or controversy requirement," without providing *any* explanation of how its arguments can be neatly siloed in this manner. [*Id.*]

It is true enough that statutory standing and Article III standing are conceptually distinct. But an argument relevant to one can certainly be relevant to the other. This is especially true in a case like this, where the presence or absence of statutory standing turns on whether the plaintiff has been injured in the manner contemplated by the statute. Where injury is made a prerequisite to statutory standing, an argument as to one cannot help but implicate the other. After all, standing requires, among other things, that the plaintiff prove that he has suffered (or will imminently suffer) a concrete injury-in-fact. *Lujan*, 504 U.S. at 561. In vigorously contesting that Plaintiff has not been damaged, Defendant has laid bare

10

weaknesses in Plaintiff's case that also call into question his standing to sue in federal court, without offering any jurisdictional theory of its own.

Federal courts have a "special obligation" to satisfy themselves of their "own jurisdiction," even when "the parties are prepared to concede it." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (internal quotation marks omitted). This duty "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Id.* at 94–95 (quoting *Mansfield, C. & L.M. R.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Because the briefing before the Court raises serious questions about the presence of standing in this case, the Court must examine the issue for itself.

Plaintiff is seeking declaratory and injunctive relief in this case. Although Plaintiff must possess standing separately as to "each type of relief," *Summers*, 555 U.S. at 493, it is ultimately Defendant's burden to make this showing on removal. The Court will examine Plaintiff's standing to pursue each form of relief in turn.

### A. Injunctive Relief

A plaintiff has standing to pursue injunctive relief only when necessary to prevent a "threat of injury" that is "both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (quoting *Golden v. Zwickler*, 394 U.S. 103, 109–110 (1969)); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) ("[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights . . . .").

11

"'[A]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 150 (1990) (emphasis original to *Clapper*)). "[T]he injury must be '*certainly impending*.'" *Big Shoulders Capital LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 568 (7th Cir. 2021) (quoting *Clapper*, 568 U.S. at 409) (emphasis original to *Big Shoulders*). Because this case is before the Court on the pleadings, Plaintiff need only allege (and Defendant must point to) facts that plausibly suggest that these requirements are met.

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief" in the absence of "any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495–96. "Though 'past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury,' a plaintiff's standing must be premised upon more than hypothetical speculation and conjecture that harm will occur in the future." *Palmer v. City of Chicago*, 755 F.2d 560, 571 (7th Cir. 1985) (quoting *O'Shea*, 414 U.S. at 496).

Plaintiff's complaint alleges two theories of injury in this case.

*First*, Plaintiff argues that Defendant's failure to make the simplehuman warranty available for his review led him to purchase a product subject to an "unlawfully limited warranty," thus depriving him of "the benefit of [his] bargain." [Dkt. No. 30, ¶ 37]; [Dkt. No. 40, 11]. In other words, he contends counterfactually that had he known about the warranty's allegedly unlawful "warranty-voiding condition"—tied "to exclusive repair by the manufacturer"—he either would not have

12

paid for the product or would not have paid full price. [Dkt. No. 40, at 11] (citing, *inter alia*, *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 478, 451 (7th Cir. 2011)).

*Second*, Plaintiff argues that the simplehuman warranty "illegally infringes on the full, lawful use of his property"—his simplehuman trash can—and that this restraint was "foisted upon him" as a direct consequence of Defendant's conduct. [Dkt. No. 40, 13–14]. Although the precise legal basis for this theory is somewhat difficult to pin down, it appears to sound in the tort of conversion or perhaps trespass.

Both of these theories rely on the premise that the simplehuman warranty is unlawful under 16 C.F.R. § 700.10(c). But as Defendant convincingly argues, Plaintiff's allegation that the warranty includes an unlawful tying condition—the *only* deficiency identified by Plaintiff—is flatly contradicted by the text of the warranties he incorporates by reference into his complaint. The Court is at liberty to consider those documents, which Plaintiff hyperlinks in his complaint.[3]

Although Plaintiff does not specify whether the trash can he purchased was subject to simplehuman's "standard" or "commercial warranty," both warranties are identical in relevant part. *See a simple promise*, SIMPLEHUMAN, https://www.simplehuman.com/pages/warranty. Both provide that because simplehuman products are "manufactured to strict specifications and . . . designed for use with simplehuman authorized accessories and replacement parts," the "warranty expressly excludes any defects or damages caused by" unauthorized

---

[3] Even were the link not sufficient in and of itself to incorporate the warranties under Federal Rule of Civil Procedure 10(c), the warranty is referred to, quoted, and "central to the complaint." *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 809 n.2 (7th Cir. 2018).

13

"accessories, replacement parts, and repair services . . . ." *Id.* The standard warranty further stipulates that, should a covered product "become[] defective during the warranty period," simplehuman "will either provide new or refurbished replacement parts for [the] product at no charge, or replace [the] product with an equivalent new or refurbished product." *Id.* The commercial warranty offers replacement parts only, not replacement with a new product. *Id.*

Both warranties are—so far as the Court can tell—fully compliant with 16 C.F.R. § 710(c), the only regulation Plaintiff invokes in support of his theory that his warranty is unlawful and, by extension, the only basis for either of his theories of injury. That provision prohibits warrantors only from "condition[ing] the continued validity of a warranty" *in toto* "on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance." *Id.* It expressly permits, however, a warrantor, to require consumers to use replacement parts or repair services if it makes them available "without charge" to the consumer. *Id.* It also "does not preclude a warrantor from expressly excluding *liability* for defects or damage caused by 'unauthorized' articles or service . . . ." *Id.* In disclaiming liability for defects caused by replacement parts, the standard and commercial warranties are in full compliance with the regulation. In fact, simplehuman's warranties are *less* stringent than they could be. Even though simplehuman offers replacement parts free of charge, it does not mandate—as it apparently could—that Plaintiff use such parts. For these reasons, neither of Plaintiff's theories of injury have merit.

14

It might be possible—though neither party has tried—to frame Defendant's failure to provide Plaintiff with the simplehuman warranty as an intangible "informational" injury. *See, e.g.*, *Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998); *Public Citizen v. Dep't of Justice*, 491 U.S. 440 (1989). The Magnuson-Moss Act was enacted, after all, in part to make information available to consumers to assist their decisionmaking. But, as the Seventh Circuit has emphasized, that theory of harm typically lies when the plaintiff requests—and is denied—information that cannot be readily obtained elsewhere. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887–88 (7th Cir. 2017). Furthermore, such a theory is valid only to the extent a defendant's failure to make information available "present[s] an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect by enacting the statute." *Id.*

As Defendant emphasizes in its motion to dismiss, Plaintiff's complaint does not allege (1) "whether he sought to review the warranty" and was denied; (2) "whether he knew he could ask for a warranty (regardless of whether Target put up signs advising him of [their] availability)"; (3) or "whether the warranty's purported third-party repair language would have affected his purchase had he read it . . . ." [Dkt. No. 32, 8]. In the absence of this information, it would be entirely speculative to conclude that Defendant's procedural violation "presented an 'appreciable risk of harm' to" any "underlying concrete interest" Congress sought to protect in enacting the MMWA. *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019).

15

And even if Plaintiff could make this showing as to his August 2021 purchase, to pursue injunctive relief, he must further demonstrate that *repeat* injury along these lines is "imminently threatened," *Summers*, 555 U.S. at 492, or, to put it another way, "certainly impending." *Clapper*, 568 U.S. at 409. This, Plaintiff cannot do.

It is important to keep in mind that Plaintiff has nowhere alleged that Defendant refuses customer-initiated requests to review copies of product warranties. Indeed, his allegations train solely on Defendant's failure to *volunteer* that information. There is a fundamental difference between the two. That Defendant failed to provide him with information does not establish an "imminent" risk that Defendant will deny a request to review warranties on future purchases. Even were Defendant to do so, most warranties are available online. Plaintiff has not alleged that he lacks the ability to access such warranties when the need arises.

The pre-sale availability rule itself permits a warrantor to publish its warranties, as simplehuman did here, online. 16 C.F.R. § 702.3(b)(2). To satisfy its related obligation to make copies of that warranty available to sellers, who in turn are responsible for providing them to consumers pre-sale, warrantors may, in lieu of providing hard copies to the seller, "[p]rovide information . . . that will inform the consumer how to obtain warranty terms" online, so long as it also provides a "phone number," "postal mailing address," "or other reasonable non-Internet based means" through which a "consumer [can] request a [physical] copy of the warranty terms," § 702.3(b)(2)(i).

16

In other words, warrantors and sellers alike may comply with the pre-sale availability rule without necessarily offering physical warranties on site. And by authorizing warrantors to simply provide physical copies on request through a dedicated phone number or mailing address, the regulation also clearly anticipates that a consumer without access to the Internet may experience some period of delay before acquiring a product warranty. For these reasons, even if Plaintiff himself lacks access to the warranty terms online, he has not alleged that Defendant would not, if asked, provide him with that access through an Internet-connected device or otherwise impede his ability to lodge a request for a physical warranty.

For all of these reasons, assuming *arguendo* that Defendant's failure to provide Plaintiff with the simplehuman warranty constituted a concrete injury-in-fact, the pleadings fall far short of plausibly showing "a real and immediate threat of repeated injury." *O'Shea*, 414 U.S. at 496; *cf. Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687 (N.D. Ill. Nov. 30, 2020) ("Once a plaintiff knows that a product is deficient, he or she is unlikely to purchase it again, and therefore unlikely to sustain future harm."); *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *10 (N.D. Ill. Sept. 13, 2022) ("The past is not always prologue when it comes to injuries and injunctive relief. A past injury does not imply a likely future injury. That's especially true when it comes to getting duped.").

Thus, the Court finds that Defendant has not established Plaintiff's standing to seek injunctive relief against future violations of the pre-sale availability rule.

### B. Declaratory Relief

The Court's conclusion that Plaintiff lacks standing to pursue injunctive relief disposes of his standing to pursue declaratory relief as well. The standard for each is identical. *Feit v. Ward*, 886 F.2d 848, 857 & n.11 (7th Cir. 1989); *Swanigan v. City of Chicago*, 881 F.3d 577, 583 n.2 (7th Cir. 2018).

## IV. Conclusion

For the reasons expressed above, the Court questions whether Plaintiff has Article III standing. Although the Court is doubtful that the parties can remedy these defects, it will—as set forth above give—give each an opportunity to address the deficiencies identified by this opinion. Plaintiff may file his supplemental submission no later than May 25, 2023. Defendant may file one of its own no later than June 1, 2023. If the jurisdictional issues are not satisfactorily addressed, the case will be remanded to the Cook County Circuit Court for further proceedings on the merits.

Enter: 22-c-4700
Date: May 11, 2023

                                              Lindsay C. Jenkins
                                              United States District Court Judge